1

2

HON. TANA LIN

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

WASTE ACTION PROJECT,           )
                                )          No. 2:24-cv-00521-TL
              Plaintiff,         )
10                               )          [PROPOSED] CONSENT DECREE
      v.                         )
11                               )
CSR MARINE SOUTH INC.,           )
12                               )
              Defendant.         )
13  _____ )

14                      **I.    STIPULATIONS**

15          WHEREAS, Plaintiff Waste Action Project filed a complaint on April 17, 2024 against CSR

16  Marine South Inc. ("CSR") (Dkt. 1) alleging violations of the Clean Water Act, 33 U.S.C. § 1251,

17  *et seq*., relating to discharges of stormwater and other pollutants from CSR's boatyard at 22501

18  Dock Ave S, Des Moines, WA 98198, covered under NPDES permit no. WAG030009 (the

19  "Facility"), and seeking declaratory and injunctive relief, civil penalties, and attorneys' fees and

20  costs.

21          WHEREAS, CSR denies Waste Action Project's allegations set forth in the Complaint.

22

23

[PROPOSED] CONSENT DECREE
No. 2:24-cv-00521-TL
     1

1

2     WHEREAS, Waste Action Project and CSR (the "Parties") agree that settlement of these

3     matters is in the best interest of the Parties and the public, and that entry of this Consent Decree is

4     the most appropriate means of resolving this action.

5     WHEREAS, the Parties stipulate to the entry of this Consent Decree without trial,

6     adjudication, or admission of any issues of fact or law regarding Waste Action Project's claims or

7     allegations set forth in its complaint and its sixty-day notice.

8     DATED this 17th day of April, 2024

9

10    LEGROS BUCHANAN & PAUL, P.S.          SMITH & LOWNEY, PLLC

      By /s/ Carey Gephart                  By /s/ Marc Zemel
11    Carey Gephart, WSBA #37106            Marc Zemel, WSBA #44325
      Attorney for Defendant CSR Marine South   Katelyn J. Kinn, WSBA #42686
12    Inc.                                  Attorneys for Plaintiff Waste Action Project

13    CSR MARINE SOUTH INC.                 WASTE ACTION PROJECT

14    By _____                  By _____
      Jeremiah Lewell                       Greg Wingard
15    Secretary                             Executive Director

16                    II.    ORDER AND DECREE

17            THIS MATTER came before the Court upon the Parties' Joint Motion for Entry of Consent

18    Decree and the foregoing Stipulations of the Parties. Having considered the Stipulations and the

19    promises set forth below, the Court hereby ORDERS, ADJUDGES, and DECREES as follows:

20            1.      This Court has jurisdiction over the Parties and subject matter of this action.

21

22

23

[PROPOSED] CONSENT DECREE
No. 2:24-cv-00521-TL
2

1

2      2.      Each signatory for the Parties certifies for that party that he or she is authorized to

3   enter into the agreement set forth herein and to legally bind the party or parties, their successors in

4   interest, and assigns of the Parties.

5      3.      This Consent Decree applies to and binds the Parties and their successors and

6   assigns.

7      4.      This Consent Decree and any injunctive relief ordered within applies to the

8   operation, oversight, or both by CSR of the Facility.

9      5.      This Consent Decree is a full and complete settlement and release of all the

10  claims in the complaint and the sixty-day notices and all other claims known or unknown

11  existing as of the date of entry of the Consent Decree that could be asserted under the Clean

12  Water Act, 33 U.S.C. §§ 1251-1387 or Wasington law, arising from operation of the Facility.

13  Upon termination of this Consent Decree, these claims are released and dismissed with

14  prejudice. CSR's payment of attorney's fees and litigation costs set forth in paragraph 9 of the

15  Consent Decree will be in full and complete satisfaction of any claims Waste Action Project

16  and Smith & Lowney, PLLC have or may have, either legal or equitable, known or unknown,

17  and of any kind or nature whatsoever, for fees, expenses, and costs incurred in the litigation.

18  Enforcement of this Consent Decree is Waste Action Project's exclusive remedy for any

19  violation of its terms.

20      6.      This Consent Decree is a settlement of disputed facts and law. It is not an admission

21  or adjudication regarding any allegations by Waste Action Project in this case or of any fact or

22  conclusion of law related to those allegations, nor evidence of any wrongdoing or misconduct on

23

[PROPOSED] CONSENT DECREE
No. 2:24-cv-00521-TL
   3

Smith & Lowney, pllc
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

the part of CSR, contractors, customers, or other third parties. CSR agrees to the terms and conditions identified below in paragraphs 7-9 in full and complete satisfaction of all the claims covered by this Consent Decree:

7.    Injunctive Relief:

a.   CSR will adhere to the requirements of the Clean Water Act at the Facility and the terms and conditions of the Boatyard General Permit ("BGP") and any successor or modified permits.

b.   For a period of two years from the date of entry of this Consent Decree, CSR will, on a quarterly basis, electronically forward to Waste Action Project copies of all submissions and written communications to and/or from Ecology related to CSR's BGP coverage for the Facility, provided that CSR may instead electronically carbon copy Waste Action Project on such submissions and written communications when possible.

c.   As of the date of entry of this Consent Decree, CSR confirms that it does not store equipment in the area northeast of its leasehold alongside the path used for the Travel Lift. Should CSR, in the future, store equipment in the area northwest of its leasehold alongside the path used for the Travel Lift, CSR will expand its footprint to and apply permit requirements to that storage area.

d.   Within thirty (30)  days of entry of this Consent Decree, CSR agrees to prepare and submit to Ecology an Engineering Report for its proposed

1

2      treatment system enhancements (as described in the Newterra proposal

3      attached hereto as **Exhibit 1**) in accordance with BGP Condition S7.A.3.

4  e.  Within three months after approval of the Engineering Report by Ecology,

5      CSR will install and have operational the new Newterra treatment system

6      enhancement referenced in the preceding paragraph. CSR agrees to pursue

7      Ecology approval in good faith and as expeditiously as possible, including

8      responding to any requests for amendments from Ecology and answering

9      any questions from Ecology within thirty (30) days. CSR also agrees to make

10     all reasonable efforts to install the treatment system during the dry season

11     and prior to October 15, 2024.

12  f.  Within thirty (30) days entry of this Consent Decree, CSR will update its

13     Stormwater Pollution Prevention Plan ("SWPPP") as follows, and provide a

14     copy to Waste Action Project within 7 days thereafter:

15     i.   Update the site map to:

16          a.  Depict the catch basin along the facility's southern

17              border at its accurate location.

18          b.  Accurately depict the berm located along the facility's

19              southern border (which does not in fact extend at a right

20              angle along the facility's eastern border).

21     ii.  Add BMPs to maintain appropriate catch basin inserts at all catch

22          basins, including on the wash pad when not in use.

23

[PROPOSED] CONSENT DECREE
No. 2:24-cv-00521-TL
5

1

2      g. Within thirty (30) days of installation of its new treatment BMPs, CSR will

3        update its SWPPP to include the new treatment BMPs, as required by the

4        BGP.

5     8. Within thirty (30) days of the entry of this Consent Decree by the Court, CSR

6   will pay $12,500 TWELVE THOUSAND FIVE HUNDRED DOLLARS) to the City of Des

7   Moines Surface Water Department for the City of Des Moines Marina Steps project. The check

8   will be made to the order of City of Des Moines and delivered by check made payable to: City

9   of Des Moines, Att: Tyler Beekley, 21650 11th Ave S, Des Moines, WA 98198. Payment will

10  include the following reference in a cover letter or on the check: "Consent Decree, Waste Action

11  Project v CSR Marine South Inc., W.D. Wash. No. 2:24-cv-00521-TL." Payment will be for

12  the sole use for the City of Des Moines Marina Steps project, as described in Exhibit 2 to this

13  Consent Decree. Simultaneously, CSR will send a copy of each of the checks and cover letters,

14  if any, to Waste Action Project and its counsel.

15    9. Within thirty (30) days of entry of this Consent Decree by the Court, CSR will

16  pay $29,400 (TWENTY NINE THOUSAND FOUR HUNDRED DOLLARS) to Waste Action

17  Project to cover Waste Action Project's litigation fees, expenses, and costs (including

18  reasonable attorneys and expert witness fees) by check payable and mailed to Smith & Lowney,

19  PLLC, 2317 East John St., Seattle, WA 98112, attn: Marc Zemel.

20    10. A force majeure event is any event outside the reasonable control of CSR that

21  causes a delay in performing tasks required by this Consent Decree that cannot be cured by due

22  diligence. Delay in performance of a task required by this Consent Decree caused by a force

23

1

2  majeure event is not a failure to comply with the terms of this Consent Decree, provided that

3  CSR timely notifies Waste Action Project of the event, the steps that CSR will take to perform

4  the task, the projected time that will be needed to complete the task, and the measures that have

5  been taken or will be taken to prevent or minimize any impacts to stormwater quality resulting

6  from delay in completing the task.

7        11.     CSR will notify Waste Action Project of the occurrence of a force majeure event as

8  soon as reasonably possible but in any case, no later than fifteen (15) days after CSR becomes aware

9  of the event. In such event, the time for performance of the task will be extended for a reasonable

10  period of time following the force majeure event.

11        By way of example and not limitation, force majeure events include

12            a.     Acts of God, war, insurrection, or civil disturbance;

13            b.     Earthquakes, landslides, fire, floods;

14            c.     Actions or inactions of third parties over which CSR has no or limited

15                    control;

16            d.     Unusually adverse weather conditions;

17            e.     Restraint by court order or order of public authority;

18            f.     Strikes;

19            g.     Any permit or other approval sought by CSR from a government

20                    authority to implement any of the actions required by this Consent

21                    Decree where such approval is not granted or is delayed, and where CSR

22                    has timely and in good faith sought the permit or approval;

23

[PROPOSED] CONSENT DECREE
No. 2:24-cv-00521-TL
7

Smith & Lowney, pllc
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

1

2         h.       Litigation, arbitration, or mediation that causes delay;

3         i.       Epidemics and pandemics, including but not limited to, COVID-19

4             related delays;

5         j.       Supply chain issues and delays.

6       12.     This Court retains jurisdiction over this matter, while this Consent Decree remains

7 in force. While this Consent Decree remains in force, this case may be reopened without filing fees

8 so that the Parties may apply to the Court for any further order that may be necessary to enforce

9 compliance with this Consent Decree or to resolve any dispute regarding the terms or conditions of

10 this Consent Decree. In the event of a dispute regarding implementation of, or compliance with,

11 this Consent Decree, the Parties must first attempt to resolve the dispute by meeting to discuss the

12 dispute and any suggested measures for resolving the dispute. Such a meeting will be held as soon

13 as practical but must be held within thirty (30) days after notice of a request for such a meeting to

14 the other Party and its counsel of record. If no resolution is reached at that meeting or within thirty

15 (30) days of the Notice, either Party may file a motion with this Court to resolve the dispute. The

16 provisions of section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), regarding awards of costs

17 of litigation (including reasonable attorney and expert witness fees) to any prevailing or

18 substantially prevailing party, will apply to any additional court proceedings necessary to enforce

19 the terms and conditions of this Consent Decree.

20       13.     The Parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), no consent judgment

21 can be entered in a Clean Water Act suit in which the United States is not a party prior to forty-five

22 (45) days following the receipt of a copy of the proposed consent judgment by the U.S. Attorney

23

[PROPOSED] CONSENT DECREE
No. 2:24-cv-00521-TL
8

Smith & Lowney, pllc
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

General and the Administrator of the U.S. Environmental Protection Agency ("EPA"). Therefore, upon the filing of this Consent Decree by the parties, Waste Action Project will serve copies of it upon the Administrator of the U.S. EPA and the U.S. Attorney General.

14.     This Consent Decree will take effect upon entry by this Court. The Consent Decree terminates two (2) years after that date or thirty (30) days after completion of all the terms herein, whichever is later.

15.     Both Parties have participated in drafting this Consent Decree.

16.     This Consent Decree constitutes the entire agreement between the Parties. There are no other or further agreements, either written or verbal. This Consent Decree may be modified only upon a writing signed by both Parties and the approval of the Court.

17.     If for any reason the Court should decline to approve this Consent Decree in the form presented, this Consent Decree is voidable at the discretion of either Party. The Parties agree to continue negotiations in good faith to cure any objection raised by the Court to entry of this Consent Decree.

18.     Notifications required by this Consent Decree must be in electronic file format and delivered via email. For a notice or other communication regarding this Consent Decree to be valid, it must be delivered to the email addresses listed below.

**If to Waste Action Project**:

Greg Wingard
Waste Action Project
gwingard@earthlink.net

**And to**:

[PROPOSED] CONSENT DECREE
No. 2:24-cv-00521-TL
9

1

2    Marc Zemel
     Katelyn Kinn
3    Smith & Lowney PLLC
     2317 East John St.
4    Seattle, WA  98112
     Email: marc@smithandlowney.com
5    katelyn@smithandlowney.com

6    **If to CSR:**

7    Mr. Scott Anderson
     Mr. Jeremiah Jewell
8    CSR Marine South, Inc.
     22501 Dock Ave S.
9    Des Moines, WA 98198
     Email: scott.anderson@csrmarine.com
10   Email: jeremiah.jewell@csrmarine.com

11   **And to:**

12    Carey M.E. Gephart
        LeGros Buchanan & Paul, P.S.
13      4025 Delridge Way SW #500
        Seattle, Washington 98106
14      Email: cgephart@legros.com

15   Any party identified in the notice provisions above may affect a change in the notice address by

16   providing a notice complying with these provisions to all other parties listed. A notice or other

17   communication regarding this Consent Decree will be effective when received unless the notice or

18   other communication is received after 5:00 p.m. on a business day, or on a day that is not a business

19   day, then the notice will be deemed received at 9:00 a.m. on the next business day. A notice or other

20   communication will be deemed to have been received: (a) if it is delivered in person or sent by

21   registered or certified mail or by nationally recognized overnight courier, upon receipt as indicated

22   by the date on the signed receipt; or (b) if the receiving party rejects or otherwise refuses to accept

23

[PROPOSED] CONSENT DECREE
No. 2:24-cv-00521-TL

Smith & Lowney, pllc
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

1

2    it, or if it cannot be delivered because of a change in address for which no notice was given, then

3    upon that rejection, refusal, or inability to deliver; or (c) for notice provided by e-mail, upon receipt

4    of a response by the party providing notice or other communication regarding this Consent Decree.

5

6           DATED this 7th day of June, 2024.

7

8

9    _____
     HON. TANA LIN
     UNITED STATES DISTRICT JUDGE

10   Presented by:

11

12   LEGROS BUCHANAN & PAUL, P.S.          SMITH & LOWNEY, PLLC

13   By */s/ Carey Gephart*                 By */s/ Marc Zemel*
     Carey Gephart, WSBA #37106             Marc Zemel, WSBA #44325
14   *Attorney for Defendant CSR Marine South*   Katelyn J. Kinn, WSBA #42686
     *Inc.*                                 *Attorneys for Plaintiff Waste Action Project*

15

16

17

18

19

20

21

22

23

[PROPOSED] CONSENT DECREE
No. 2:24-cv-00521-TL
   11

SMITH & LOWNEY, PLLC
2317 EAST JOHN ST.
SEATTLE, WASHINGTON 98112
(206) 860-2883

Exhibit 1

# Proposal for

## CSR Marine South, Inc.

### Purus 50 Polishing Systems

### QU-2303593.R0

### 10/13/23



**Prepared for**

**Jeremiah Jewell, CSR Marine South, Inc.**

**Jeremiah.jewell@csrmarine.com | 206-632-2001**

**Prepared by**

**Chris Fromme, Newterra Corporation, Inc.**

**cfromme@newterra.com | 213-248-9940**



## Executive Summary

Newterra is pleased to provide CSR Marine with the following proposal for 22501 Dock Ave. S. Des Moines, WA 98198.

This firm proposal is designed to meet your needs based on our mutual discussions or based on the information you provided in your request for Aquip polishing systems. Please let us know if these requirements have changed or are inaccurate in any way.

The requirements include:

- Skidded Purus systems with pumps, cartridge filtration, and ion exchange for polishing Aquip 50 system.

As a benefit to you, all Newterra projects include:

- Professional start-up assistance, commissioning, training, and service (if required)
- Extensive experience with engineering, PLC programming and fabrication capabilities in-house.
- Experience manufacturing water treatment systems of this scale and complexity with strict performance and safety requirements
- Optimum equipment arrangement with an objective to minimize footprint and operating costs

The price for this firm proposal is $87,220.00. Please see Section 5. Commercial offering for additional details.

All prices quoted are valid for 30 days from the date stated in the following proposal. If you have any questions regarding our proposal, please do not hesitate to contact me.

Sincerely,
Chris Fromme
Western United States Regional Manager
Stormwater/Remediation
Newterra Inc.

Email: cfromme@newterra.com
Cell: 213-248-9940



QU-2303593.R0

# Table of Contents

1. Incoming Water Quality ................................................................................................. 1

   1.1. Inlet Quality ................................................................................................. 1

   1.2. Outlet Quality Target ................................................................................. 1

2. Newterra Scope of Supply ........................................................................................... 2

   2.1. Base System Equipment ............................................................................ 2

3. Engineering Submittals ............................................................................................... 3

   3.1. Base Package ............................................................................................... 3

   3.2. Optional Engineering Documentation ..................................................... 3

4. Startup Services ............................................................................................................ 4

   4.1. Startup Services Scope of Work ................................................................ 4

5. Commercial Offer ........................................................................................................ 6

   5.1. Base System ................................................................................................ 6

   5.2. Startup Services .......................................................................................... 6

   5.3. Freight ......................................................................................................... 6

   5.4. Invoicing and Payment Terms ................................................................... 6

   5.5. Project Schedule ......................................................................................... 6

   5.6. Equipment Shipment and Delivery ........................................................... 6

   5.7. Pricing Notes .............................................................................................. 7

   5.8. Conditional Offering ................................................................................... 7

   5.9. After Sales Service ...................................................................................... 7

6. Acceptance of Proposal ............................................................................................... 8

7. Newterra Project Team Members ............................................................................... 9

8. Customer Testimonials ............................................................................................... 11

9. Newterra Project References ...................................................................................... 12

10. Appendix – Presales Drawings ................................................................................... 16



# 1. Incoming Water Quality

The source water for the polishing skids in Seattle, WA is representative effluent from existing Aquip systems.

## 1.1.  Inlet Quality

The proposed system is designed based upon the following water quality summary from an email dated 9/13/23:

**CSR Marine Seattle:**
**Benchmarks are 32 ppb for copper and 90 ppb for zinc.** We're so close, but even a full media refresh on our Aquip couldn't get us there. We're averaging 42 ppb for copper and 71 ppb for zinc. In practical terms, this means we're exceeding the limits 50% of the time on copper and 25% of the time on zinc. We have enough data to know we're not going to make it long term with this system and we're going to trigger a Level 3 Engineering report soon.

**CSR Marine Des Moines:**
**Benchmarks are 44 ppb for copper and 90 ppb for zinc.** We're close on copper but way off on zinc. We've been averaging 47 ppb for copper and 271 ppb on zinc. We only make our copper benchmarks 50% of the time, and we have never made the zinc benchmark. We've already triggered a Level 3 enforcement action, so if anything, this yard is our priority. As a side note, I think we may have a problem with the metal roof on our building and the galvanized fencing causing our zinc numbers to be so high.

Inlet Variability

If in the event that the influent water source changes, the ability of the water treatment system to produce the designed treated water quality and/or quantity may be impaired. Customer may continue to operate the system but assumes the risk of damage to the system and/or additional costs due to increased consumable usage. Additional supplemental equipment can be purchased form Newterra, which in certain cases can restore normal production rates and minimize system damage.

## 1.2.  Outlet Quality Target

The proposed system is designed to treat water with the following water targets:

Seattle Location:
- Copper < 32 ppb
- Zinc < 90 ppb

Des Moines Location:
- Copper < 44 ppb
- Zinc < 90 ppb



QU-2303593.R0

# 2. Newterra Scope of Supply

The proposed treatment system consists of the components described in this section.

## 2.1. Base System Equipment

### 2.1.1. Des Moines Aquip 50 Polishing Skid

o Powder-coated carbon steel weldment – (1 each) – total footprint of system estimated at approximately 12 ft length by 3.5 ft width (flexible). The following components will be skid mounted within the boundary:

- All pipe made of schedule 80 PVC
- Shutoff valving on skid boundaries and including filter, ion exchange isolation and bypass, check valve for pump discharge.
- (1 ea) Main skid pump
  - Self-Priming Close Coupled
  - 50 GPM at 40 psi, 5 HP
  - 240V/3Ph/60Hz
  - Cast Iron
- (1 ea) Variable Frequency Drive
  - NEMA 4X, Panel Mount
  - 240V/1Ph/60Hz Input, 240VAC/3Ph/60Hz Output
  - Estimated 18 FLA @ 240V/1Ph/60Hz
  - Pressure transducer
- (1 ea) Fused disconnect switch and relay panel with alarm indicating lights
- (1 ea) High Flow Cartridge filter housing
  - Vertical FRP Housing with pressure indicators, differential pressure switch, and pressure relief
  - 40" x 6" 5-micron polypropylene cartridge filters
- (1 ea) Ion Exchange Vessel
  - FRP tank, 24" diameter x 65" H
  - Inlet and outlet distributors
  - Silica sand for underdrain and softening resin
  - Isolation and bypass valving
  - Pressure indicators and pressure switch, air vent
- (1 ea) Horizontal rectangular tank
  - 110 gallon Polyethylene
  - 48" L x 35" W x 18" H
  - Fittings and Level switches



QU-2303593.R0

# 3. Engineering Submittals

## 3.1. Base Package

The following submittals are provided with equipment purchase.

| Deliverable | Description |
|---|---|
| P&ID – Process & Instrumentation Diagram | Diagram of all process components, sensors, instrumentation, pipe sizes and materials, main equipment specifications and control signals/alarms/interlocks. |
| GA – Skid General Arrangement | Drawing of 3D skid with plan/elevation/side views to denote skid dimensions, plumbing inlet/outlet connections, electrical connections, lifting/loading points and includes main equipment bill of materials. |
| Electrical Schematics | Drawing of main skid power connections, disconnect, equipment schedule and component layout of panel. Electrical schematic drawing showing all wire connections within the control panel and component layout of the panel. |
| User Manual | PDF document describing operation of skid. Includes information about safety, installation, operation, control, maintenance, troubleshooting, alarms, spare parts, drawings & warranty. |
| Spare Parts List | Recommended critical spare parts list for the system. |
| Major Equipment Cut Sheets and Vendor Manuals | All cut sheets or user manuals for all major equipment on the skid. Includes items like pumps, controls, sensors, control valves, tanks etc. |
| 1 Hour Webinar Design Review | 1 Hour webinar reviewing total project scope and presented submittals. |
| Shipping Pack List | List of items shipping to customer including loose-packed items like filters or spare parts |

## 3.2. Optional Engineering Documentation

The following is a list of options that can be provided to the client upon request. Newterra to provide estimate based on scope of project.

| Deliverable | Description |
|---|---|
| Seismic Anchorage Structural Engineering Package | Complete structural drawings for skid anchoring signed/stamped by PE Engineer. |
| Control Narrative | Document describing the overall control scheme for the skid. HMI menu overview and alarm scheme. |
| I/O Table and SOO | Spreadsheet and documentation of all skid control set points, PLC I/O, alarms, Sequence of Operation and PID control loops. |
| PLC/HMI Code | PLC and HMI specific code the skid. These are the actual program files uploaded to the device. **Requires executed limited use and license agreement** |
| In Person Design Review | An in-person design review can be conducted with the customer's design and operations team. |



QU-2303593.R0

# 4. Startup Services

The following is a breakdown of start-up services responsibilities.

| Item | Description | Scope of Supply | |
| | | Newterra | CSR Marine |
| --- | --- | --- | --- |
| Equipment Installation | Unloading the equipment, rigging the equipment into place, connection existing power wiring to control panel, verifying adequate drainage, testing for adequate water pressure, and testing power supply | | X |
| | Remote technical support of Equipment Installation | X | |
| Plumbing, Electrical and Pre-Startup Inspection | Plumbing and electrical connections to be finalized before Newterra installation visit. All plumbing and electrical connections to the equipment to be perform by the customer. | | X |
| | Includes time to inspect installation work, address questions, develop punch list of completion items necessary prior to startup. | X | |
| Commissioning Checklist | Newterra pre-commissioning checklist to customer | X | |
| | Complete pre-commissioning checklist and send completed form to Newterra prior to site mobilization for startup services. | | X |
| Filter Media Loading/ Pre-treatment Loading/ Membrane Loading | Includes loading filter media, loading chemical drums and loading membrane elements (if not loaded in factory). Field service technician with support. | X | X |
| Equipment Startup and Commissioning | Includes preparing the equipment to operate (flush, backwash, steam, regenerate, etc.), operating the equipment manually, operating the equipment automatically, setting and testing control system, flushing preservative, and putting system into automatic operation. Also includes informal, hands-on training conducted by the service technician in front of the equipment. | X | |

## 4.1.  Startup Services Scope of Work

If start-up services are selected:

- This service work assumes no weekends, or a holiday are required and is based on an eight-hour workday.
- Travel time to and from the job site for Newterra Field Service personnel to perform the tasks define in section 5, above, is included in this estimate.
- To ensure personnel availability, Newterra requires a minimum of four weeks' advance notice to schedule equipment start-ups.
- The commissioning plan does not allow for site specific safety training. Any site-specific safety training required will be billed at Newterra's Field Service Labor Rates.



QU-2303593.R0

- On-time completion of Newterra's startup and commissioning services requires satisfactory installation of all equipment by Customer (where not included above). If additional service time is required for Newterra's commissioning scope due to Customer's changes in scope or delays in completion of installation, additional charges will apply, billed at Newterra's Field Service Labor Rates.



QU-2303593.R0

# 5. Commercial Offer

## 5.1. Base System

| Description | Price |
|---|---|
| Base System Equipment, as defined in section 3.1 | |
| Total | $84,200.00 |

## 5.2. Startup Services

| Description | Price |
|---|---|
| Up to 2 hours of remote communication (phone, teleconference, emails, or other as appropriate) is included at no additional charge to provide support for startup and commissioning of a single system. | Included (no additional charge) |
| Additional time beyond 2 hours of remote communication to be billed at Newterra Field Service Technician rate. (Optional – Actual time used will be invoiced) | Bill Actual: Hours x Field Service Technician Rate |
| Price indicates cost for (2) Newterra personnel to be on-site for (1) days with assistance to help load media.  Additional days to be billed at Newterra field service rate. (Optional – notify account manager to include) | $3,020.00 |

## 5.3. Freight

A shipping estimate will be supplied upon contract award. All pricing is FCA (INCOTERMS 2020) from designated factory.

## 5.4. Invoicing and Payment Terms

- Terms without credit approval are prepaid
- Terms are as follows with credit approval:

### 5.4.1. Equipment Systems

Payment Terms- Net 30 with approved credit:
- 50% deposit required with confirming order
- 50% and taxes (if any) invoiced when product(s) ready to ship
- 50% restocking fee applies for all cancelled orders

## 5.5. Project Schedule

The Buyer and Seller will arrange a kick-off meeting after contract acceptance to develop firm deliverable and shipment schedule.

## 5.6. Equipment Shipment and Delivery

Firm shipment estimates to be determined upon award of contract. The Buyer and Seller will arrange a kick-off meeting after contract acceptance to develop firm shipment schedule.



QU-2303593.R0

## 5.7. Pricing Notes

- All prices quoted are valid for 30 days from the date stated in the proposal (firm proposals only).
- All prices quoted are in USD.
- Any sales or value added tax is not included.
- The customer will pay all applicable local, state, provincial, or federal taxes and duties.
- The equipment delivery date, start date, and date of commencement of operations are to be negotiated.
- Commercial terms and conditions shall be in accordance with Newterra's Standard Terms and Conditions of Sale.
- This proposal and the rates provided herein are subject to final site, environmental, Newterra compliance check and financial due diligence by Newterra.
- This proposal supersedes all previous proposal and correspondence.
- Seller's price and delivery schedule are based on the assumption that Buyer will take delivery as and when foreseen by the schedule. Where this is not the case, the Parties must agree in advance an alternative place of delivery, failing which the Seller will be entitled to ship the equipment to storage. Buyer shall issue a Change Order to consider any additional cost or delay incurred by Newterra in implementing this change.

## 5.8. Conditional Offering

Customer understands that this proposal has been issued based upon the information provided by customer, and currently available to, Newterra at the time of proposal issuance. Any changes or discrepancies in site conditions (including but not limited to system influent water characteristics, changes in environmental, health and safety (EH&S) conditions, and/or newly discovered EH&S concerns), Customer financial standing, Customer requirements, or any other relevant change, or discrepancy in, the factual basis upon which this proposal was created, may lead to changes in the offering, including but not limited to changes in pricing, warranties, quote specifications, or terms and conditions. Newterra's offering in the proposal is conditions upon a full Newterra EH&S and Customer financial review.

## 5.9. After Sales Service

Newterra can provide a service agreement adjusted to the needs of each application.  We offer monthly, quarterly, and annual services as required.  Services include performance monitoring, controls check, consumable parts replacement, water quality testing and operator training.

Should you want to learn more about Newterra's expert service offerings on your equipment, please contact your local Newterra Water Treatment Technologist or visit our website http://www.h2oengineering.com to get connected with a Customer Service Representative in your region.  In North America, please dial 1-866-987-0303 to contact a customer service representative.



QU-2303593.R0

# 6. Acceptance of Proposal

The commercial offer, specifications, terms, and conditions are satisfactory and are hereby accepted. You are authorized to do the work as specified in this proposal. Payment will be made as outlined under the commercial offer.

Name and Title: _____

Signature: _____

Date of acceptance: _____



QU-2303593.R0

# 7. Newterra Project Team Members

### Jeffery Martens – General Manager



Jeff has 25 years of water treatment experience as a global business development and marketing executive. He has a history of delivering some of the most innovative and successful water treatment solutions in the industry. As the Vice President of Sales and Market Development, he is responsible for setting strategy, building partnerships, and delivering the right technology solutions for our customers. Jeff graduated from the University of Michigan with a Chemical Engineering degree and went on to get his MBA from Northwestern's Kellogg School of Management.

### Ben Corcoran – VP of Operations



As Vice President of Operations, Benjamin Corcoran directs all project processes and logistics, including materials procurement, resource planning, parts fabrication, product assembly, procedural implementation, and delivery logistics. Benjamin is responsible for Newterra's facility requirements, manufacturing safety programs, final product inspection and prove-out and the company's UL 508A certification. Benjamin has been a part of the Newterra team for the last 10 years.

### Trevor Weiss – Applications Engineer



Trevor Weiss is a Water Engineering M.S. graduate from California Polytechnic State University, San Luis Obispo. As an Applications Engineer, Trevor is responsible for presales system design including technology selection, water treatment modelling, system specifications, and project costing. Trevor is a bridge between sales and engineering and works with customers to better understand their technical needs to ensure projects are delivered on time and meet customer expectations. Trevor has hands-on experience in the manufacturing industry supporting production and research & development of new technologies related to water treatment.

### Stephenie Wright – Water Process Engineer

As a Water Process Engineer, Stephenie interfaces between sales and engineering to identify requirements and meet customer needs. She is responsible for presales system design including technology selection, water treatment modeling, system specifications and project costing. Stephenie has a M.S. in Engineering from the University of Arizona, Fayetteville, and prior experience in municipal wastewater system design.



### Erik Barker – Field Operations Supervisor



Erik Barker is the Field Operations Supervisor for Newterra, Inc. Erik has close to 20 years of experience in the ozone and water purification industry. He currently oversees all service operations, in-house and in-field duties for both the Clean World and Pure Water divisions of Newterra. In addition, Erik also oversees and maintains Newterra's ozone remediation system rental fleet. Erik's experience provides a wide range of capabilities from system deployment and installation to preventative maintenance and service, to system troubleshooting, prove-out and repairs.

### Caitlin McLaughlin – Lifecycle Product Manager



As the Lifecycle Product Manager, Caitlin assists with planning and organizing the Service Department to meet Newterra's objectives for customer support. Caitlin graduated from San Francisco State University with a B.S. in Environmental Studies: Earth System Science and has experience in biofuel, pollution prevention, and water conservation programs. Her background in product research and development, production management, software troubleshooting and customer support makes her an excellent asset to the team. Caitlin is responsible for resource allocation of the Service Department and serves as the primary point of contact for all service-related activities and projects.



QU-2303593.R0

# 8. Customer Testimonials



"Two years after installation and startup of our large-scale system they remain committed to ensuring our system operates as designed and we continue to use their service team as a result."

Jorge Montoy, Sovereign Consulting Inc



"In our experiences with H2O Engineering, we have witnessed this company's determination to deliver a quality product regardless of project obstacles and unforeseen interference that many vendors would charge an additional premium to resolve. H2O Engineering delivered the solution on time, on budget and in a professional manner."

Anderson Dill Jr., Water Dynamics, Inc.



"It has been a pleasure to work with $H_2O$ Engineering on various projects at the Water Resource Recovery Facility. Their entire staff has shown a high degree of professionalism, dedication and attention to detail throughout the entire time frame of the projects. Their company has provided a value-based relationship with the Water Resource Recovery Facility for the City of San Luis Obispo."

Howard Brewen, Water Resource Recovery Facility



"In the craft brewing industry, quality is top priority and continuous production is paramount. Not only has our water quality improved, but we've successfully integrated new equipment centers without interrupting process."

Mark Fischer, Firestone Walker Brewing Company



QU-2303593.R0

# 9. Newterra Project References

The following **BLUE BOLD** descriptions are hyperlinks. Click on links for more details.

## 175 GPM RO SYSTEM WITH BLENDED MAKE UP



## IRRIGATION WATER FILTRATION AND REUSE SYSTEM FOR VERTICAL FARM



## WATER TREATMENT FOR INDOOR AG FACILITY



## MOBILE DI WATER FOR PLANNED SYSTEM FLUSH



## RO FILTRATION FOR BEVERAGE PROCESSING



## CONTINUOUS OZONE FILTRATION AND REUSE SYSTEMS





QU-2303593.R0

## OZONE SYSTEM FOR IRRIGATION WATER REUSE

 

## RO SYSTEMS FOR INDOOR AGRICULTURE



## ULTRAPURE WATER SYSTEM FOR ELECTRONICS MANUFACTURING





QU-2303593.R0

## 10 GPM RO SYSTEM FOR MUNICIPAL WASTE RECYCLE



## DI PROCESS AND CONTROL SYSTEM FOR LARGE MANUFACTURING CO.



## THREE, 208 G/H MOBILE OZONE SPARGE SYSTEMS




# 10.   Appendix – Presales Drawings



QU-2303593.R0



PURUS 50 - DES MOINES

AQUIP 50

RELAY PANEL

RELAY PANEL

STORMWATER

OUTFALL

FLAT TANK

PURUS SKID

CARTRIDGE FILTER

ION EXCHANGE

ALARM   ALARM   ALARM   ALARM

BYPASS

OVERFLOW

Submersible

| | newterra | | | THIS INFORMATION IS THE PROPERTY OF NEWTERRA AND CANNOT BE REUSED OR REPRODUCED WITHOUT THE WRITTEN CONSENT OF NEWTERRA. | | | | PFD & LAYOUT PURUS SYSTEMS CSR MARINE | | |

H2O Engineering, Inc.
189 GRANADA DR, SAN LUIS OBISPO, CA 93401
P. 866-987-0303 F.805-547-0113
www.h2oengineering.com
CA CONTRACTOR #790167

| REVISIONS | | | | | | | |
|---|---|---|---|---|---|---|---|
| REV | DESCRIPTION | DRAWN | DATE | CHECKED | DATE | APPROVED | DATE |
| A | PRELIMINARY | TW | 10/10/23 | ---- | ---- | ---- | ---- |
| ---- | ---- | ---- | ---- | ---- | ---- | ---- | ---- |
| ---- | ---- | ---- | ---- | ---- | ---- | ---- | ---- |
| ---- | ---- | ---- | ---- | ---- | ---- | ---- | ---- |
| ---- | ---- | ---- | ---- | ---- | ---- | ---- | ---- |

DIMENSIONS ARE IN INCHES:
TOLERANCES:
FRACTIONAL ±0.125"
ANGULAR: MACH± 1°
TWO PLACE DECIMAL: ±0.01
THREE PLACE DECIMAL: ±0.005
INTERPRET GEOMETRIC
TOLERANCES PER ASME Y14.5-2009
MATERIAL: ----      FINISH: ----

SIZE B   DRAWING NO. PRESALES   REV. A
SCALE NTS   WEIGHT ----   SHEET NO. 2 OF 6



144"

48"

38"  35"

TANK

22"

12"  PUMP

Ø13"

FILT

Ø24"

IX

24"

12"  VFD/PANEL

PURUS 50 CONCEPTUAL LAYOUT - DES MOINES

**newterra**
H2O Engineering, Inc.
189 GRANADA DR, SAN LUIS OBISPO, CA 93401
P. 866-987-0303 F 805-547-0113
www.h2oengineering.com
CA CONTRACTOR #790167

THIS INFORMATION IS THE PROPERTY OF NEWTERRA AND CANNOT BE REUSED OR REPRODUCED WITHOUT THE WRITTEN CONSENT OF NEWTERRA.

| REVISIONS | | | | | | | |
|---|---|---|---|---|---|---|---|
| REV | DESCRIPTION | DRAWN | DATE | CHECKED | DATE | APPROVED | DATE |
| A | PRELIMINARY | TW | 10/10/23 | ---- | ---- | ---- | ---- |
| ---- | ---- | ---- | ---- | ---- | ---- | ---- | ---- |
| ---- | ---- | ---- | ---- | ---- | ---- | ---- | ---- |
| ---- | ---- | ---- | ---- | ---- | ---- | ---- | ---- |
| ---- | ---- | ---- | ---- | ---- | ---- | ---- | ---- |

DIMENSIONS ARE IN INCHES:
TOLERANCES:
FRACTIONAL ±0.125"
ANGULAR: MACH± 1°
TWO PLACE DECIMAL: ±0.01
THREE PLACE DECIMAL: ±0.005
INTERPRET GEOMETRIC
TOLERANCES PER ASME Y14.5-2009
MATERIAL: ----   FINISH: ----

PFD & LAYOUT
PURUS SYSTEMS
CSR MARINE

| SIZE B | DRAWING NO. PRESALES | REV. A |
|---|---|---|
| SCALE NTS | WEIGHT ---- | SHEET NO. 4 OF 6 |



This legend/symbol sheet contains the following sections:

**ACTUATORS**
- SPRING DIAPHRAGM (OR GENERIC)
- SPRING DIAPHRAGM WITH POSITIONER
- PRESSURE BALANCED DIAPHRAGM
- PNEUMATIC LINEAR PISTON
- PNEUMATIC LINEAR PISTON WITH POSITIONER
- ROTARY MOTOR (M)
- HANDWHEEL
- SOLENOID (S)
- ELECTRIC (E)
- CONTACTOR (C)

**VALVES** (NO / NC)
- GATE (OR GENERIC)
- BALL
- BUTTERFLY
- NEEDLE
- GLOBE
- DIAPHRAGM
- ANGLE
- PLUG
- PINCH
- KNIFE GATE
- GATE
- BACKFLOW PREVENTER
- CHECK
- THREE WAY
- FOUR WAY
- BACKPRESSURE REGULATOR-INTERNAL
- BACKPRESSURE REGULATOR-EXTERNAL
- PRESSURE REDUCING REGULATOR-INTERNAL
- PRESSURE REDUCING REGULATOR-EXTERNAL
- PRESSURE REDUCING REGULATOR W/ GAUGE (PG)
- PRESSURE RELIEF VALVE
- RUPTURE DISC

**PUMPS**
- CENTRIFUGAL
- METERING
- DIAPHRAGM
- PERISTALTIC
- GEAR
- SUBMERSIBLE
- HYDRO-PNEUMATIC TANK
- POSITIVE DISPLACEMENT

**COMPRESSORS**
- CENTRIFUGAL
- RECIPROCATING
- ROTARY
- BLOWER

**EQUIPMENT**
- STORAGE TANK
- RO SYSTEM
- FILTER
- UV STERILIZER
- VARIABLE FREQUENCY DRIVE (VFD)
- TANK VENT
- DEIONIZATION BOTTLE
- BALL FLOAT
- ACTIVATED CARBON
- STATIC MIXER
- DRUM
- PLATE AND FRAME HEAT EXCHANGER
- HEATER
- FAN
- INJECTOR
- OZONE GENERATOR (O3)
- OXYGEN CONCENTRATOR

**MEASUREMENT**
- PADDLE WHEEL
- MAGNETIC FLOWMETER (M)
- SONIC FLOWMETER
- TURBINE FLOWMETER
- VORTEX SHEDDING FLOWMETER
- DUAL ELEMENT SENSOR PH, ORP
- SINGLE ELEMENT, CONDUCTIVITY
- FLOW ORIFICE (FO)
- BALL FLOAT LEVEL SENSOR
- FLOW NOZZLE
- FLOW METER W/ VALVE (FICV)

**FLOW REGULATION**

**FILTER**
- AIR

**CLEAN WORLD**
- INJECTOR
- OZONE GENERATOR
- OXYGEN CONCENTRATOR

**INDICATION**
- VARIABLE AREA FLOWMETER
- FLOW GLASS (FG)
- PRESSURE INDICATOR (PI)
- TEMPERATURE INDICATOR (TI)

**PIPE FITTINGS**
- REDUCER
- FLANGE
- UNION
- PIPING INSULATION
- STRAINER

**ANNOTATION**
- LINE CROSS
- I/O FUNCTION CALLOUT TOP (DI / DO / B / A)
- I/O FUNCTION CALLOUT BOTTOM (DI / DO / A / A)
- PROCESS CONNECTORS
- INSTRUMENT SIGNAL CONNECTORS
- PROCESS FLOW ARROW
- DRAIN (DR)

**FUNCTION SYMBOLS**
- FIELD MOUNTED CONTROL SYSTEM
- FIELD MOUNTED INSTRUMENT
- PANEL MOUNTED CONTROL SYSTEM
- PANEL MOUNTED INSTRUMENT
- DERIVED PARAMETER/ ALARM

**LINE DIAGRAM**
- PUSHBUTTON SWITCH
- NC/NO SWITCH
- TOGGLE SWITCH
- NO/NC TOGGLE (H O A)
- RELAY OPERATING COIL
- NORMALLY OPEN RELAY
- NORMALLY CLOSED RELAY
- NO/NC RELAY
- 1-POLE CIRCUIT BREAKER
- 3-POLE CIRCUIT BREAKER
- FUSE
- GROUND
- INTERLOCK
- PILOT LIGHT
- SOLENOID COIL
- WIRING POINT/TERMINAL
- TRANSFORMER
- VFD

**LINES**
- GAS — ANY GAS
- PRIMARY PROCESS
- SECONDARY PROCESS
- PNEUMATIC
- ELECTRICAL SIGNAL
- HYDRAULIC
- FLEXIBLE HOSE
- SCOPE BOUNDARY

**REVISIONS**

| REV | DESCRIPTION | DRAWN | DATE | CHECKED | DATE | APPROVED | DATE |
|-----|-------------|-------|------|---------|------|----------|------|
| A | PRELIMINARY | TW | 10/10/23 | ---- | ---- | ---- | ---- |
| ---- | ---- | ---- | ---- | ---- | ---- | ---- | ---- |
| ---- | ---- | ---- | ---- | ---- | ---- | ---- | ---- |
| ---- | ---- | ---- | ---- | ---- | ---- | ---- | ---- |
| ---- | ---- | ---- | ---- | ---- | ---- | ---- | ---- |
| ---- | ---- | ---- | ---- | ---- | ---- | ---- | ---- |

THIS INFORMATION IS THE PROPERTY OF NEWTERRA AND CANNOT BE REUSED OR REPRODUCED WITHOUT THE WRITTEN CONSENT OF NEWTERRA.

**newterra**
H2O Engineering, Inc.
189 GRANADA DR, SAN LUIS OBISPO, CA 93401
P. 866-987-0303 F. 805-547-0113
www.h2oengineering.com
CA CONTRACTOR #790167

DIMENSIONS ARE IN INCHES:
TOLERANCES:
FRACTIONAL ±0.125"
ANGULAR: MACH± 1°
TWO PLACE DECIMAL: ±0.01
THREE PLACE DECIMAL: ±0.005
INTERPRET GEOMETRIC TOLERANCES PER ASME Y14.5-2009
MATERIAL: ----   FINISH: ----

PFD & LAYOUT
PURUS SYSTEMS
CSR MARINE

SIZE: B
DRAWING NO.: PRESALES
REV.: A
SCALE: NTS
WEIGHT: ----
SHEET NO.: 5 OF 6



| FIRST LETTER | MEASURED OR INITIATING VARIABLE | ALARM | HIGH-HIGH ALARM | HIGH ALARM | LOW ALARM | LOW-LOW ALARM | SENSOR FAULT ALARM | BLIND CONTROLLER | INDICATING CONTROLLER | SENSOR (PRIMARY ELEMENT) | GLASS | INDICATOR | CONTROL STATION | PILOT LIGHT | TOTALIZER | RECORD | SWITCH | HIGH-HIGH SWITCH | HIGH SWITCH | LOW SWITCH | LOW-LOW SWITCH | BLIND TRANSMITTER | INDICATING TRANSMITTER | SOLENOID VALVE (PILOT), RELAY, COMPUTATION, CONVERTER | CONTROL VALVE | VALVE | FINAL CONTROL ELEMENT | SYMBOL | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A | ANALYSIS | AA | AAHH | AAH | AAL | AALL | AAT | AC | AIC | AE | | AI | | AL | | AR | AS | ASHH | ASH | ASL | ASLL | AT | AIT | AY | ACV | AV | AZ | | |
| B | USER'S CHOICE | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| C | USER'S CHOICE | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| D | USER'S CHOICE | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| E | VOLTAGE | EA | EAHH | EAH | EAL | EALL | EAT | EC | EIC | EE | | EI | EK | EL | | ER | ES | ESHH | ESH | ESL | ESLL | ET | EIT | EY | | | EZ | | |
| F | FLOW | FA | FAHH | FAH | FAL | FALL | FAT | FC | FIC | FE | FG | FI | | FL | FQI | FR | FS | FSHH | FSH | FSL | | FT | FIT | FY | FCV | FV | | FO | ORIFICE PLATE |
| G | USER'S CHOICE | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| H | HAND | HA | | | | | | HC | HIC | | | | | HL | | | HS | | | | | | | | HCV | HV | | HMS | PUSHBUTTON SWITCH |
| I | CURRENT (ELECTRICAL) | IA | IAHH | IAH | IAL | IALL | IAT | IC | IIC | IE | | II | IK | IL | | IR | IS | ISHH | ISH | ISL | | IT | IIT | IY | | | IZ | | |
| J | POWER | JA | JAHH | JAH | JAL | JALL | JAT | JC | JIC | JE | | JI | JK | | JQI | JR | JS | JSHH | JSH | JSL | | JT | JIT | JY | | | JZ | | |
| K | TIME SCHEDULE | KA | | | | | | | | | | KI | | KL | | | KS | | | | | | | KY | | | | | |
| KQ | TIME TOTAL | KQA | KQAHH | KQAH | KQAL | KQALL | | | | | | | | KQL | KQI | KQR | | KQSHH | KQSH | KQSL | | | | | | | | | |
| L | LEVEL | LA | LAHH | LAH | LAL | LALL | LAT | LC | LIC | LE | LG | LI | | LL | | LR | LS | LSHH | LSH | LSL | | LT | LIT | LY | LCV | LV | | LKx | LEVEL RATE-OF-CHANGE |
| M | MOTOR CONTROL | | | | | | | | | | | | MK | | | | MS | | | | | | | | | | | | |
| N | USER'S CHOICE | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| O | USER'S CHOICE | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| P | PRESSURE OR VACUUM | PA | PAHH | PAH | PAL | PALL | PAT | PC | PIC | | | PI | | PL | | PR | PS | PSHH | PSH | PSL | | PT | PIT | PY | | PV | | PSV | PRESSURE SAFETY VALVE |
| PD | PRESSURE DIFFERENTIAL | PDA | PDAHH | PDAH | PDAL | PDALL | PDAT | PDC | PDIC | | | PDI | | PDL | | PDR | | PDSHH | PDSH | PDSL | | PDT | PDIT | PDY | PDCV | | | | |
| Q | QUANTITY | | | | | | | | | | | | | | QQI | | | | | | | | | | | | | | |
| R | USER'S CHOICE | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| S | SPEED OR FREQUENCY | SA | SAHH | SAH | SAL | SALL | SAT | SC | SIC | SE | | SI | SK | SL | | SR | SS | SSHH | SSH | SSL | | ST | SIT | SY | SCV | | SZ | | |
| T | TEMPERATURE | TA | TAHH | TAH | TAL | TALL | TAT | TC | TIC | TE | | TI | | TL | | TR | TS | TSHH | TSH | TSL | | TT | TIT | TY | TCV | TV | TZ | TW | THERMOWELL |
| U | MULTI-VARIABLE | | | | | | | | | | | | | | | | | | | | | UT | UIT | | | | | | |
| V | USER'S CHOICE | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| W | WEIGHT OR FORCE | WA | WAHH | WAH | WAL | WALL | WAT | WC | WIC | WE | | WI | | WL | WQI | WR | WS | WSHH | WSH | WSL | | WT | WIT | WY | WCV | WV | WZ | | |
| X | UNCLASSIFIED | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Y | EVENT, STATE OR PRESENCE | YA | | | | | | | | | | YI | YK | YL | | YR | YS | | | | | | | YY | | | | | |
| Z | POSITION OR DIMENSION | ZA | ZAO=OPEN | ZAC=CLOSE | | | ZAT | ZC | ZIC | ZE | ZG | ZI | ZK | ZL | | ZR | ZS | ZSO=OPEN | ZSC=CLOSE | | | | ZIT | ZY | ZCV | ZV | ZZ | ZKx | POSITION RATE-OF-CHANGE |

**newterra** — H2O Engineering, Inc.
189 GRANADA DR, SAN LUIS OBISPO, CA 93401
P. 866-987-0303 F.805-547-0113
www.h2oengineering.com
CA CONTRACTOR #790167

THIS INFORMATION IS THE PROPERTY OF NEWTERRA AND CANNOT BE REUSED OR REPRODUCED WITHOUT THE WRITTEN CONSENT OF NEWTERRA.

| REVISIONS | | | | | | | |
|---|---|---|---|---|---|---|---|
| REV | DESCRIPTION | DRAWN | DATE | CHECKED | DATE | APPROVED | DATE |
| A | PRELIMINARY | TW | 10/10/23 | ---- | ---- | ---- | ---- |
| ---- | ---- | ---- | ---- | ---- | ---- | ---- | ---- |
| ---- | ---- | ---- | ---- | ---- | ---- | ---- | ---- |
| ---- | ---- | ---- | ---- | ---- | ---- | ---- | ---- |

DIMENSIONS ARE IN INCHES.
TOLERANCES:
FRACTIONAL ±0.125"
ANGULAR: MACH± 1°
TWO PLACE DECIMAL: ±0.01
THREE PLACE DECIMAL: ±0.005
INTERPRET GEOMETRIC TOLERANCES PER ASME Y14.5-2009
MATERIAL: ----    FINISH: ----

PFD & LAYOUT
PURUS SYSTEMS
CSR MARINE

SIZE B | DRAWING NO. PRESALES | REV. A
SCALE NTS | WEIGHT ---- | SHEET NO. 6 OF 6



**TERMS AND CONDITIONS:**

1. PURCHASE ORDER:
   Newterra ("Newterra" or "Seller") will not initiate work prior to purchasing party ("Buyer") providing a signed purchase order or letter which includes the overall price of system and options chosen, purchase order number, payment terms, billing address, Tax Identification Number, and Newterra Proposal Number including revision and date.

2. APPLICABILITY / SCOPE:
   All goods and services provided shall be governed by the terms and conditions set forth herein. Any modifications to these terms or to the scope of any purchase order or project hereunder, shall be mutually agreed upon and set forth in writing executed by both parties. Such writing shall clearly set forth the nature and extent of the change, and, if applicable, any adjustment in price associated with such change.

3. SCHEDULE
   Newterra's estimated delivery schedule is included in the proposal and may be affected by manufacturing loading at time of order. Authorizing Newterra to order long lead components at time of order may help to expedite the project schedule. In order to notify Newterra of the intent to allow the long lead components to be ordered immediately please check the box on the signature page of this document.

4. CREDIT APPROVAL:
   All new purchase orders are subject to mandatory credit approval for first time Newterra Buyers and discretionary credit approval for repeat Newterra Buyers (credit approval form available from Newterra upon request). Should Seller learn of any information that causes Seller concern about Buyer's ability to perform any of its obligations owing to Seller under a purchase order, Seller has the right to request Buyer to provide Seller adequate assurance of due performance on such terms as are deemed reasonable by Seller when acting in good faith, including the right to demand full or partial payment from Buyer as demanded by Seller. A complete credit check is required prior to shipping on a Net-30 or "C.O.D. – customer check acceptable" basis.

5. TELEMETRY SERVICES AGREEMENT:
   A Telemetry Services Agreement must be completed for all system orders that include a Newterra SiteLink Remote Telemetry and Communication Package. The Telemetry Services Agreement is required to activate the services listed in the proposal (Telemetry Service Agreement available from Newterra upon request).

6. CURRENCY: As per pricing page of the proposal.

7. PAYMENT TERMS:
   The price to be paid by Buyer shall be mutually agreed upon by the parties and set forth in writing.  Unless otherwise agreed to, prices quoted do not include any state or local sales or use tax, special fees, duties or custom fees, freight and handling charges, or export crating costs that may be added to the price at invoicing. The Buyer agrees to make payments as described herein.

Additionally, the Buyer agrees to grant to Newterra security as described below to secure the payment in full for the equipment supplied relating to this purchase order.  The Buyer hereby assigns and pledges to Newterra a security interest in all of the Buyer's rights, title, and interest in the following (the "Collateral"):

i.  Equipment, supplies, fittings, machinery, and other tangible personal property, wherever located, sold to Buyer by Newterra under the purchase order;

ii. The trade account receivable generated by the design, construction and installation of the equipment referenced above up to the cost of such equipment.

The Buyer represents and warrants that this agreement and the UCC Financing Statement(s) executed herewith create a valid and perfected priority security interest in the Collateral, securing the payment of amounts owing by the Buyer to Newterra. The Security interest assigned to Newterra by the Buyer is released upon payment in full for the equipment.

8. METHOD OF PAYMENT:
   All orders shall be shipped C.O.D. or require payment in advance until credit has been established. Payment shall be made in the currency quoted without discount. Minimum billing amount is $100. Shipments outside of the U.S.A. and Canada shall be prepaid (by credit card, wire transfer, or cashier's check), or by an irrevocable Letter of Credit.

   Processing fees may be assessed for additional costs incurred for credit card charges, returned checks, Letters of Credit, or other bank charges.  Wire transfers should be initiated with all bank charges paid from the account of the Buyer. Newterra reserves the right to specify the method and/or timing of payment (including prior to shipment).

   Newterra shall be entitled to a liquidated late charge calculated at a rate of 1.5% per month (18% per annum) or if lower, at the maximum rate permitted by law, for any payment not made within 10 days following the date due.

   If the Buyer disputes any portion of an invoice, they shall notify Newterra in writing with specific details and pay the undisputed portion as per the executed purchase order. Buyer shall reimburse all costs incurred in collection of past due amounts including but not limited to attorney's fees, court costs and collection fees incurred by Newterra.

   At Newterra's option, Letters of Credit will be accepted by Newterra when compliant with the following: The Letter of Credit must (a) Be IRREVOCABLE and CONFIRMED by a U.S.A. or Canadian bank; (b) Be in favor of Newterra; (c) State payment is by site draft payable; (d) State that ALL bank charges, including those outside the country of origin, are to be applied to BUYER'S account; (e) Must state Ex-Works, point as factory unless terms of Pro Forma Invoice specify otherwise, (f) Be advised through a class A bank and show Buyer as applicant for the Letter of Credit.

9. SHIPPING & DELIVERY TERMS:
   Unless otherwise specified in the proposal, shipping incoterms are:

**newterra.com**

Brockville  |  Chaska  |  Coraopolis  |  Heber Springs  |  Portland  |  San Luis Obispo  |  Trooper



FCA delivery location* as per incoterms® 2010, cost of transportation and in-transit insurance will be prepaid and added to the final invoice.

*delivery location as specified in the proposal.

If a customer wishes to arrange for their own transportation, then incoterms will be FCA Newterra final manufacturing facility as per incoterms® 2010.

Equipment provided by Newterra cannot be held after completion without additional charges being paid to Newterra.

10. ACCEPTANCE:
(a)  Buyer shall inspect all shipments of equipment or other goods within 10 days of receipt and shall promptly notify Newterra of any specific defects or non-conforming goods. The parties acknowledge that acceptance of any goods supplied hereunder shall be deemed to have occurred if Buyer fails to notify Newterra of any such defects or non-conforming goods within 10 days of the date of receipt. The parties acknowledge that acceptance of any services provided hereunder shall be deemed to have occurred if Buyer fails to notify Newterra of any defects or non-conformance in such services within 10 days of the date the services were completed;

(b)  For any order hereunder which requires Newterra's involvement in the installation, start-up, check-out and/or commissioning of any Newterra equipment or system, the parties acknowledge that system acceptance shall be deemed to have occurred upon completion of the startup and checkout of the system, or upon beneficial use of the system by Buyer, whichever occurs first.

11. OPERATIONAL AND MAINTENANCE PROCEDURES:
Buyer acknowledges that any improper use, maintenance, or modification of the equipment provided hereunder, or use of unqualified maintenance or service technicians will severely impair the operational effectiveness of the entire system. Buyer hereby agrees to indemnify, defend and hold harmless Newterra from and against any and all third-party claims arising, in any manner, out of: (a) Buyer's neglect of the equipment; (b) Buyer's use of technicians not authorized by Newterra to service the equipment; or (c) Buyer's improper use or modification of the equipment or failure to follow the operational and maintenance procedures provided with the equipment.

12. CUSTOM EQUIPMENT OR SYSTEMS:
Buyer acknowledges that any approvals and/or listings specified in Newterra's proposal are limited to the specific scope and application set forth in the proposal and may not cover or apply to any custom or special equipment or services which are outside the scope of Newterra's proposal.

Newterra shall retain all proprietary rights to any and all technical data, designs, or other information developed by Newterra (and not provided by Buyer) in the course of designing, developing and/or manufacturing custom equipment or systems.

Programming for Newterra's custom equipment and systems is proprietary and will remain the property of Newterra and is not available for distribution to Buyer or others at any time.

13. TAXES:
All applicable Federal, State/Provincial/Local sales or use taxes and/or custom/duty taxes are not included in the prices quoted by the Seller unless otherwise specified in writing.  If Seller is subjected to any such tax in connection with this sale or the delivery; the same shall be added to the purchase price and Buyer shall be responsible for paying that tax or reimbursing Seller therefore within 30 days.

14. PROPOSAL EXPIRATION:
Proposal and pricing valid for 90 days unless extended, in its sole discretion, by Newterra unless stated otherwise in the proposal.

15. DELAYS:
If the approval to proceed with ordering material is not given within 21 days of execution of this order, Newterra reserves the right to adjust the sell price of this Purchase Order based on actual increases incurred from its Suppliers due to the delay in the project schedule.

16. SYSTEM STORAGE AFTER COMPLETION:
At the Buyer's request, storage of completed systems may be provided. Upon receipt of a system storage request, Newterra will provide a quote to store the system at a nearby storage facility. The costs will include a monthly storage fee as well as the costs associated to load and unload the system at the storage yard (e.g. crane or fork truck), and financing charges for any unpaid balance that goes beyond due date of the requested storage time. The warranty period will start upon the date of notice of readiness to ship. Any invoices due for payment that are subject to the shipment of the system will be initiated and subject to payment based on the date of notice of readiness to ship.

17. OVERDUE ACCOUNTS:
Overdue accounts of the above terms are subject to a finance charge of 1.5% per month. If legal proceedings are instituted for collection of overdue accounts unpaid after 30 days, the Buyer will be liable for all costs adjudged by the court, including court costs and reasonable attorney fees.

18. CHANGE ORDERS:
Any Buyer driven change orders accepted by Newterra will be billed as follows: (1) Engineering hours billed at a rate of $150 per hour, (2) $500 administration fee plus materials and labor, and (3) all other costs associated with execution of change order, including but not limited to restocking fees, return fees, etc.

19. TECHNICAL ASSUMPTIONS:
This proposal and pricing is based on Newterra's interpretation of the sections of the RFP or specification that have been made available to Newterra.  Exceptions have been noted wherever possible.  In the event of a conflict between the language in the specification or the proposal, Buyer agrees that the language in the proposal takes precedence and is the basis of the proposed pricing and scope.



20. HEALTH & SAFETY:
Any health and safety requirements for entering a project site must be communicated at the time of Order. It is the Buyer/Owner's responsibility to ensure that field technicians operating on live panels are informed and equipped with the appropriate PPE.

21. INSTALLATION:
Electrical service and installation are not included unless specifically indicated in the proposal and approved in writing.

22. APPROVALS:
Local approvals and certificates are not included unless otherwise specified in the proposal.

23. SITE PERMITS & INSPECTIONS:
Obtaining any required site permits (i.e. building) is the responsibility of the Buyer/Owner; Newterra is not responsible for any such items unless otherwise specified in the proposal.

All required site inspections including, but not limited to electrical, building and fire are the responsibility of the Buyer/Owner; Newterra is not responsible for any such items.

24. WARRANTY:
Refer to separate warranty document(s) attached hereto and incorporated herein as if set forth in full

25. ENGINEERING SUBMITTAL PACKAGE:
Upon receipt of purchase order, Newterra and Buyer shall agree to a timeline for provision of engineering documentation, unless otherwise agreed to in writing.

26. BREACH:
In addition to any failure to comply with any other terms as set forth herein, the occurrence of any of the following events shall constitute a breach on the part of Buyer: (a) If Buyer shall become insolvent or make a general assignment for the benefit of creditors; (b) If a petition for Bankruptcy is filed by or against Buyer; (c) If, at any time Buyer fails to fulfill its obligations under the terms and conditions hereof, or acts in such a manner as to endanger performance of such obligations; (d) If Newterra shall reasonably believe that Buyer will not timely fulfill its obligations or otherwise perform hereunder, and Buyer is unable to provide reasonable assurances that such timely performance will occur.

Upon breach by Buyer, Newterra may terminate the contract or agreement by giving notice to the Buyer. Such termination may be effective immediately at the sole choice and discretion of Newterra. In the event of a breach and contract termination, Buyer is still responsible for all costs incurred by Newterra.

27. INDEMNIFICATION:
Each party shall defend, indemnify and hold each other's officers, directors and employees, harmless from and against any third party claims, damages or losses, including reasonable attorney's fees and costs (whether based on negligence, contract or any other legal theory), to the extent such claims, damages or losses are attributable to the negligence of each party or each party's failure to perform in accordance with the terms and conditions set forth herein and the recovering party is the prevailing party in any claim or litigation.

28. CONFIDENTIAL & PROPRIETARY INFORMATION:
Buyer acknowledges that the information and processes utilized by Newterra in the design, manufacture, and supply of its products and systems are confidential and proprietary to Newterra. Buyer agrees to treat as confidential and proprietary any such information or processes, including, but not limited to, design information or data, proposals, software, schematics, drawings, operational and maintenance manuals, testing procedures or other similar technical information ("Confidential Information") provided by Newterra in connection with the supply or installation of products or systems hereunder, and will, at a minimum, protect any such confidential Information in a manner commensurate with the measures taken to protect Buyer's own confidential or proprietary information. Newterra retains all rights, titles and interests in all such Confidential Information and Buyer shall not use or otherwise disclose to any third party any such Confidential Information except to the extent authorized by Newterra in writing.

29. INTELLECTUAL PROPERTY RIGHTS:
Excepting for the benefit of air and/or water treatment as contemplated by the design of the equipment, all rights, benefits from any value received as a result of the use of intellectual property, equipment, information or advice provided by Newterra remain the sole property of Newterra, specifically, including, but not limited to, as it may relate to carbon or water credits, etc.

Newterra retains any and all intellectual property rights in and to the equipment, services, and/or information supplied hereunder (including, but not limited to, patents, copyrights, trademarks and trade secrets) ("Intellectual Property").

Buyer is not granted any interest, right, or license with respect to any such Intellectual Property, except to use the equipment, services and/or information for the purposes for which it is specifically provided to Buyer in accordance with the terms and conditions hereof.
Newterra shall indemnify and hold Buyer harmless from and against all third-party claims of infringement or alleged infringement arising out of Buyer's use of any equipment, services, or information supplied by Newterra hereunder. Provided, however, that Newterra's indemnity obligation hereunder shall not apply to, and Newterra shall not be responsible for, any claims to the extent arising out of Buyer's modification of Newterra's equipment, services or information, or use of such equipment, services or information: (a) in combination with equipment, services or information not supplied by Newterra, or (b) in the operation of any process or in any other manner inconsistent with the purpose for which Newterra's equipment, services or information were intended.

30. INSURANCE:
Each party shall provide and maintain at its own expense, such policies of insurance in such amounts as are appropriate and commercially reasonable for parties engaging in the type of activities contemplated by the projects entered into hereunder. Upon request, each party shall furnish the other with certificates evidencing the required insurance coverage.

newterra.com



31. LIENS:
Newterra shall promptly pay for all materials, supplies and labor employed by it in providing the goods and/or services hereunder, such that any equipment or system supplied to Buyer remains free of materialmen's, warehousemen's, mechanics', and any other similar liens. Newterra shall promptly discharge any such liens arising out of its performance hereunder.

32. PRESERVATION OF LIEN RIGHTS:
Newterra reserves all rights hereunder to file notice and execute liens in the event Buyer breaches it obligations in the proposal, purchase order, or as set forth herein. Any executed lien waiver, release claim, or payment application executed and submitted by Newterra shall not serve to waive Newterra's right to pursue a lien claim for previously noticed, reserved, or filed claims.

33. ASSIGNMENT:
The rights and responsibilities of Buyer as set forth herein are personal to Buyer and may not be assigned or delegated without the prior written consent of Newterra.

34. NON-WAIVER:
The parties' failure to demand strict performance or to otherwise enforce any rights hereunder shall not constitute a waiver of any rights hereunder. No claim arising out of a breach hereof may be discharged in whole or in part by a waiver of the claim unless supported by consideration and set forth in a writing signed by the waiving party. Any such waiver shall apply to the specifically identified claim only and shall in no way constitute a waiver or discharge of any other prior or subsequent claim.

35. SUSPENSION BY BUYER:
If any project or order, for which Newterra is to supply goods and/or services hereunder, is suspended by Buyer for any reason other than a breach by Newterra, Newterra shall take all reasonable measures to cooperate with Buyer in rescheduling any planned or ongoing work, and in otherwise complying with the suspension instructions. Provided, however, that in the event of any such suspension which continues for a period of 90 days, Newterra shall be entitled to terminate that order, without any further liability or obligation thereunder. Provided, further, that Newterra shall be entitled to prompt reimbursement from Buyer per Cancellation/Termination clause hereof.

36. CANCELLATION/TERMINATION:
Purchaser reserves the right at any time without cause to terminate or cancel all or part of any undelivered or unperformed portion of this Purchase Order by notice to Seller. Upon receipt of such notice, Seller shall immediately stop delivery or work on the portion of the order terminated or canceled. In the event of such termination or cancellation, Purchaser shall be liable for the value of the work performed, materials received, and any materials not received that cannot be cancelled, prior to the time that notice of termination is given. If any project or order, for which Newterra is to supply goods and/or services hereunder, is terminated in agreement with the provisions of these terms and conditions, Newterra shall be entitled to charge 25% of selling price if canceled prior to incurring related engineering, drafting, and production time. Additional costs incurred as a direct result

of termination may include, but are not limited to, freight and storage charges, costs of labor, and transportation.

37. APPLICABLE LAW / DISPUTES:
Buyer acknowledges that the "Terms" from the Contract are deemed to be made in Pennsylvania for transactions in the U.S.A. and in Ontario for transactions in Canada, and that Buyer, in relation to this project, is deemed to be transacting business in Pennsylvania (U.S.A. transactions) and Ontario (Canadian transactions). It is the expectation of the parties that any disputes arising hereunder, whether in contract, tort or otherwise, will be amicably resolved by mutual agreement of the parties.

Any dispute, involving the supply of goods or services within the U.S.A. or Canada, which cannot be amicably resolved by the parties, shall be submitted to binding arbitration in accordance with the applicable rules and regulations of the American Arbitration Association for U.S.A contracts or the Canadian Arbitration Association for Canadian contracts. The substantive law of Pennsylvania for U.S.A. contracts or Ontario for Canadian contracts shall apply to any such arbitration, which shall be conducted in Philadelphia, Pennsylvania (U.S.A. contracts) or Ottawa, Ontario (Canadian contracts).

Nothing herein shall be construed as preventing Seller from enforcing any claim or right to a mechanic's lien or any claim or right against a bond regardless of where such a claim must be filed or enforced.

38. FORCE MAJEURE:
Neither party shall be liable for any cost increase, failure or delay in its performance resulting from any cause beyond its reasonable control including, but not limited to, acts of God; acts or omissions of civil or military authority; fires; floods; unusually severe weather; strikes or other labor disputes; embargoes; wars; political strife; riots; epidemic; pandemic; changes in laws, delays in transportation; sabotage; or fuel, power, material or labor shortages.

39. INTEGRATION / MODIFICATION:
Except as otherwise specifically set forth herein, these terms and conditions are intended by both Buyer and Newterra as the final and exclusive integrated expression of their agreement with respect to any projects or orders subject hereto. No additions to or modifications of any of the terms or conditions herein shall be effective unless set forth in a writing duly executed by both parties.

40. CONSTRUCTION:
If these terms and conditions have been provided in response to an invitation to bid or other solicitation from Buyer, and the provisions set forth herein differ in any way from the provisions (if any) of Buyer's invitation or solicitation, these terms and conditions shall constitute Newterra's binding counteroffer upon the Buyer's decision to order from Newterra. If these terms and conditions constitute a counteroffer, acceptance hereof must be on the exact terms contained herein. Any additional, conflicting or different terms proposed by Buyer shall constitute a counteroffer by Buyer and shall not be effective unless set forth in a mutually agreed upon writing executed by both parties.



41. RETURNED GOODS:

No equipment shall be returned to Seller without its prior written authorization. All returns due to unwanted products or Buyer error will be assessed a minimum 25% restocking charge, based on the original invoice amount (shipping charges will be borne by the Buyer).

The Buyer will be credited the full invoice amount, including return shipping charges, if the original shipment was Newterra's error. To obtain specific performance under this warranty, the defective product must be returned to Newterra together with proof of purchase, installation date, failure date, supporting technical data, and documentation supporting the warranty claim.

Any defective product to be returned to a Newterra factory or service center must be sent Freight Prepaid. Buyers desiring to return product should contact our Customer Service Department at 1-800-420-4056 to obtain a Return Authorization (RA) number and a Return Material Tag (RMT). Each carton must be visibly marked with the RA number and have the RMT tag (RMT) in the packing list pouch and shipped via ground transport to: The Newterra facility indicated on the Return Authorization form.

The following applies to returns: (a) Cartons that are not marked with the RA number or do not have the RMT tag in the packing list pouch will be returned to the sender, unopened; (b) The appropriate credit will be issued upon verification of the age and condition of the product returned; (c) Customized products cannot be returned for credit unless it is identified that Newterra shipped the order in error; (d) Return of products not manufactured by Newterra will be subject to the original manufacturer's return to stock policy; (e) Newterra will not accept C.O.D. return shipments; (f) A return authorization will become null and void if equipment is not received by Newterra within 30 days of the date of issue. Claims for error in quantity or condition must be made within 10 days of receipt of the material. Newterra will not be responsible for any claimed shortages not reported within 10 days.

42. LIMIT TO LIABILITY:

Under no circumstances whatsoever will Newterra be responsible for liquidated, indirect, special, incidental or consequential damages including, but not limited to, lost business, overhead, loss of use of property, delay, damages, lost profits or third party claims, whether foreseeable or not, even if Newterra has been advised of the possibility of such damages in connection with the delivery, installation, use or performance of the equipment or the provision of maintenance services by Newterra regardless of whether such claims are alleged to have arisen out of breach of warranty, breach of contract, stricter absolute liability in tort, or other act, error or omission or any other cause whatsoever, or any combination of the foregoing.

Under no circumstances whatsoever will Newterra be responsible for direct damages in excess of 15% of the contract value.

43. RETENTION:

Newterra reserves the exclusive right to provide an irrevocable letter of credit in lieu of any retention amount.

IN WITNESS WHEREOF, the Buyer hereby agrees and accepts these Terms and Conditions.

The customer authorizes Newterra to proceed with ordering the long lead parts per section 3 of these terms and conditions.

☐ Yes        ☐ No

Company: _____

Signature: _____

Name (print): _____

Title: _____

Date: _____



**WARRANTY**

This Warranty Agreement is between Newterra Corporation, Inc. or Newterra Ltd. (known as Newterra) and the customer (known as the Buyer).

**General Warranty Statement**

1. Newterra warranties those products of its manufacture against defective workmanship or material for a period of 12 months from startup or 18 months from the date of notice of readiness to ship, whichever comes first.

2. This warranty is expressly and strictly limited to replacing, without charge (see Warranty Exclusions), any part or parts which proven to Newterra's satisfaction upon examination, to have been defective in design, material or workmanship, and which have not been neglected, abused or misapplied, provided the Buyer gives Newterra immediate written notice upon discovery of any claimed defect.

3. During the warranty period, parts will be shipped as necessary with instructions to replace, which can be further elaborated over phone or email; visit(s) of our technician to site can be covered if there is a service agreement in place; otherwise, actual charges will be quoted to the owner at that time, if required.

4. Newterra will also warranty those component parts manufactured by others to the extent of the original manufacturer's warranty.  In any case, specific components warranties will be extended a minimum of one year from date of notice of readiness to ship.

5. Membranes, if used, will be covered under separate warranty statement.

6. This warranty shall not be construed as a fitness of purpose warranty nor a performance warranty.

**Warranty Exclusions**

1. Warranty coverage does not include:
   - Freight, labor, travel, and living expenses associated with parts replacement
   - Normal maintenance items such as lubrication, fan belts, and cleaning of the equipment
   - Consumable items such as filters and reagents.
   - Replacement of items due to normal wear and tear
   - System parts damaged because of Buyer changes to the system and/or PLC program without the written consent of Newterra.
   - System electrical components or motors damaged by inconsistent power, voltage fluctuations and/or frequent power failures.

2. If the Buyer, or any contractor employed by the Buyer, contracts an outside company, other than Newterra for modification of system equipment, without knowledge of Newterra, the warranty coverage will be denied.

3. If the Buyer, or any installation contractor employed by the Buyer, contracts outside Newterra for installation work or erection of quoted equipment, the Buyer shall assume full responsibility for said contract.

4. The warranty shall not cover normally scheduled preventative maintenance or maintenance services listed in O&M Manual unless specifically contracted with Newterra.

5. If Newterra's Supplier assesses a part evaluation fee as part of their warranty claim assessment process, then the Buyer will be required to pay this fee. All parts must be returned to Newterra, transportation prepaid, unless other arrangements have been pre-approved by Newterra.

**Warranty Validation**

1. Newterra requires that the system be commissioned by a Newterra factory trained technician unless specifically authorized by Newterra.  Newterra authorization will be dependent on the qualifications of the Buyer's / contractor technicians.

2. Warranty validation is conditional upon timely receipt of:
   a. Signed Installation Checklist – by authorized Buyer representative, if not Newterra.
   b. As built Site drawings – by authorized Buyer representative, if not Newterra.
   c. Signed Pre-Commissioning Checklist – by authorized Buyer's representative, if not Newterra.
   d. Signed Commissioning Checklist – by authorized Buyer's representative, if not Newterra.

3. If the warranty validation requirements are not followed, Newterra reserves the right to deny warranty coverage.

**Warranty Conditions**

1. The system must be maintained and serviced in accordance with the schedule and procedures listed in the system O&M Manual.  Failure to follow Newterra's recommendations may result in a denial of warranty coverage.  Newterra reserves the right to review maintenance records as part of the warranty claim assessment process.

**newterra.com**

Brockville │ Chaska │ Coraopolis │ Heber Springs │ Portland │ San Luis Obispo │ Trooper

WTC.006  2023-03-26

Initials: _____

Exhibit 2



# City of Des Moines

PLANNING, BUILDING AND PUBLIC WORKS
www.desmoineswa.gov
21650 11TH AVENUE SOUTH
DES MOINES, WASHINGTON   98198-6317
(206) 870-6522          FAX (206) 870-6596



4/11/2024

Greg Wingard
Waste Action Project

RE: Funding Commitment Letter – Marina Steps Project

Dear Mr. Wingard

As indicated previously, terms of settlement have been reached with CSR located in the Des Moines Marina. A total of $12,500 is available as a result of this settlement to fund local projects that support water quality.

The Des Moines Marina Steps project is the ideal candidate for receipt of these funds. Located less than 500 feet away from the CSR site this project will provide pedestrian connectivity between the Des Moines downtown and the flood of the Marina. A component of the project is to provide water quality treatment for a portion of the upstream basin by employing a series of bioretention cells. The project is currently in design and construction is expected to be completed in 2025. More information about the project can be found here: https://desmoinesmarinasteps.com/.

When received, the funds of $12,500 would be spent solely on this project and will not be spent on lobbying or other purposed. After completion of the project the City of Des Moines will report back to the Court and parties that the funds have been spent in compliance with the terms of this letter.

Thank you,

*Tyler Beekley*

Tyler Beekley, P.E.
Surface Water Manager
City of Des Moines, WA
21650 11th Ave S
Des Moines WA, 98198

*The Waterland City*
♻ Printed on Recycled Paper